IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JAMES R. VANLANINGHAM, JR.**                                                           **PLAINTIFF**

**V.**                                                           **CAUSE NO. 1:25-CV-008-LG-BWR**

**BURL CAIN, *ET AL*.**                                                           **DEFENDANTS**

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

Defendants VitalCore Health Strategies, LLC, Voila Riggin, Sheila Mickle, and Charmaine McCleave (the "Medical Defendants"), by and through counsel, submit this Memorandum in Support of their Motion for Summary Judgment for Failure to Exhaust Administrative Remedies based on Plaintiff's failure to exhaust his available administrative remedies with respect to the claims asserted as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (PLRA), and would show this Court as follows:

**Facts and Procedural History**

Vanlaningham brought this action under 42 U.S.C. §1983 on January 8, 2025. [Docs. 1, 1-1]. Plaintiff's Complaint alleges that he did not receive appropriate medical treatment from the Medical Defendants while housed at the South Mississippi Correctional Institution ("SMCI"). *Id.* The Complaint itself, as well as the attachments to it, lack dates of when he first sought medical care but his claims state that "all defendants practiced blatant deliberate indifference which resulted in life altering injuries (cruel and unusual punishment) by deliberately refusing to treat a medical emergency in Plaintiff and/or by refusing to provide a minimum of adequate medical access for lack of supervision, training, or any appropriate oversight." *See id.* at p. 4 (section II.,

1

D). However, records from the MDOC Administrative Remedy Program ("ARP") show that only the following grievances were submitted or dated between the first date complained of in his ARPs (December 6, 2023) and the date Vanlaningham filed the Complaint (January 8, 2025):

First, SMCI-24-0675 is dated **April 10, 2024** and complains about medical treatment he did or did not receive starting **December 6, 2023**. *See* Exhibit 1. This ARP was rejected on April 28, 2024. *Id.* at p. 8. This was due to the ARP seeking relief beyond the power of the ARP in that the ARP cannot award monetary damages.[1] *Id.*

Second, SMCI-24-0881 is also dated April 10, 2024 and pertains to the same medical issues but was amended to drop the claim for monetary damages and was, as Plaintiff incorrectly claims, "timely resubmitted **May 15, 2024**." Exhibit 2 at p. 3. Vanlaningham received a First Step Response on **July 19, 2024**. *Id.* at p. 11. The First Step Response stated:

> Your request to have a notarized written agreement by VitalCore CEO and MDOC Commissioner will not be done. Ms. Mickle does not work for VitalCore/MDOC. Education to medical staff is ongoing/continuing for all aspects of medical care. Your medical offsite appointments have been done and will continue to be done.

Ex. 2 at p. 11. That same day, Vanlaningham checked the box for wishing to proceed to Step Two and wrote, "I have a lawyer looking into it." *Id.* Three days later, on **July 21, 2024**, MDOC Director Cooley responded *via* letter:

> You turned in a second step appeal but you did not appeal anything. You only stated you would have a lawyer look into it. If you wish to resubmit your corrected request/complaint, you may do so, provided that it is timely and according to proper procedure.

*Id.* at p. 12.

Over three months later, on **October 23, 2024**, Vanlaningham purported to submit an amended 2nd Step Response appeal that stated "after a procedural error which was not the fault

---

[1] On top of that, the ARP was outside the 30-day window to file a grievance from the time of the

2

of Vanlaningham, this document is timely filed on October 23, 2024." *Id.* at p. 15. The appeal (again) sought a "notarized agreement signed by Burl Cain and VitalCore CEO Viola Riggin that he be seen by a qualified endocrinologist et al for his serious injuries on the schedule ordered by the qualified specialists." *Id.* The 2nd Step Response provided:

> Your request for a signed document between Burl Cain and CEO of VitalCore, will not be done. Your request to see an endocrinologist; you must submit a sick call request form to see a medical provider to discuss this. As of this date you have not submitted a SCR for this.

*Id.* This 2nd Step Response was dated **November 14, 2024**. *Id.*

Thus, the ARP records show as a matter of law that Vanlaningham did not timely and properly follow pre-suit grievance procedures regarding the alleged denial of medical care relating to his alleged medical conditions. The first ARP was untimely, and the second ARP was an improper and ineffective appeal as to the April 10, 2024 grievance. Further, though Vanlaningham was told he had imperfectly submitted his appeal on July 21, 2024, he failed to amend or correct until October 23, 2024. And while Plaintiff still received a 2nd Step Response as to the that grievance/appeal, the response explained that he never submitted a sick call for the relief he was seeking in October 2024. Said another way, the untimely appeal itself sought relief that was never sought in the initial ARP process, which was untimely from the beginning since it concerned matters from December 2023. For these reasons, summary judgment is appropriate as to all of Vanlaningham's claims.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a

---

wrongful act or omission (the alleged lack of care beginning December 6, 2023).

verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). "In reviewing the evidence, the court must therefore refrain from making credibility determinations or weighing the evidence." *Id.* at 397-98.

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)). "Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Amerson v. Pike Cnty., Miss.*, No. 3:08-cv-00053-DPJ-FKB, 2012 WL 968058, at *2 (S.D. Miss. Mar. 21, 2012). Fact disputes are resolved in the nonmovant's favor "only when both parties have submitted evidence of contradictory facts." *Id.*

**Law and Argument**

The Medical Defendants are entitled to judgment as a matter of law on all of Plaintiff's claims because he failed to exhaust his available administrative remedies before filing this lawsuit. Exhaustion of administrative remedies through the prison grievance system is a prerequisite for lawsuits filed under § 1983. *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The Fifth Circuit takes a "strict approach" to the exhaustion requirement. *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008). "Exhaustion is mandatory for 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Dismissal is mandatory where an inmate has failed to properly exhaust the applicable administrative grievance procedure before filing his complaint. *Gonzalez v. Seal,* 702 F.3d 785, 788 (5th Cir. 2012); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

"**Substantial compliance is insufficient**; prisoners must properly exhaust all available remedies by, among other things, complying with deadlines and procedural rules." *Wheater v.*

5

*Shaw*, 719 Fed. App'x. 367, 369 (5th Cir. 2018) (citing *Woodford*, 548 U.S. at 90-91) (emphasis added). Therefore, Vanlaningham cannot satisfy the exhaustion requirement "**by filing an untimely or otherwise procedurally defective administrative grievance or appeal**." *Woodford*, 548 U.S. at 83-84 (emphasis added). "Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement." *Evans v. Harrison Cnty. Adult Det. Ctr.*, No. 1:18-cv-00087- RHW, 2020 WL 980149, at *1 (S.D. Miss. Feb. 28, 2020). The grievance process must be carried through to its conclusion before suit can be filed under the PLRA. *Id.*

A properly exhausted claim has "complete[d] the administrative review process in accordance with the applicable procedural rules." *Woodford*, 548 U.S. at 88. Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Further, "the exhaustion requirement hinges on the availability of administrative remedies." *Pettis v. Hall*, No. 1:19-cv-00127-RPM, 2021 WL 785096, at *1 (S.D Miss. Mar. 1, 2021). "An inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotations omitted). Under Mississippi Code § 47-5-801, MDOC has established a two-step grievance procedure that prisoners must exhaust before filing a lawsuit:

> An inmate must file a grievance within 30 days of the complained-of incident. The grievance is reviewed by the prison's legal-claims adjudicator and, if there is an adverse response at the first step, the inmate may appeal to step two. If the inmate disagrees with the step two response, he may sue.

*Wheater*, 719 Fed. App'x. at 369-70. Chapter VIII of MDOC's Inmate Handbook describes the ARP's requirements for offenders:[2]

---

[2] https://www.mdoc.ms.gov/sites/default/files/Misc/Inmate%20Handbook%202023_0.pdf at p. 16 (last accessed Nov. 10, 2025). "The Court may take judicial notice of MDOC's Inmate Handbook." *Montalto v. Shaw*, No. 3:20-cv-00822-HTW-LGI, 2023 WL 2258363, at *2 n.2 (S.D. Miss. Jan. 6, 2023), *report*

6

> **IV. PROCEDURES**
> A. Inmates are encouraged to continue to seek solutions to their concerns through informal means. However, to ensure their right to use the formal procedure, **they must make their request to the Administrative Remedy Program (ARP) in writing within a 30-day period after an incident has occurred.**

*See id.* (emphasis added). Further, the Handbook provides:

> **VI. ACCEPTANCE OR REJECTION**
> Notice of the request's acceptance or rejection will be given via Form ARP-1. If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*Id.* at p. 17.

The evidence here establishes Vanlaningham did not exhaust administrative remedies with respect to his instant claims against the Medical Defendants under the applicable rules. The Medical Defendants have presented records related to all such grievances from December 6, 2023 to the filing of Plaintiff's lawsuit on January 8, 2025. The ARP records show the relief Plaintiff sought was untimely from the start regarding the April 10, 2024 claims since they revolve around alleged lack of medical care in December 2023. The ARP process clearly states that Vanlaningham had 30 days from the incident complained of to submit an ARP. He waited four months. Further, regarding his attempt at submitting an amended submission, he once again was late in correcting the appeal despite being advised on July 21, 2024 of its inadequacy. His submittal on October 23, 2024 could have been rejected for untimeliness but Vanlaningham received a response that explained he failed to even first ask for the relief he sought on "appeal" by submitting a sick call. The Handbook plainly allows for amended appeals to be submitted within five days but he waited another three months. See Handbook at p. 17. The claims here are barred as a matter of law and should be dismissed.

---

*and recommendation adopted by* 2023 WL 2254563, at *1 (S.D. Miss. Feb. 27, 2023).

7

**Conclusion**

Vanlaningham's failure to timely exhaust his available administrative remedies bars his suit on the same claims now. Therefore, his Complaint should be dismissed.

**RESPECTFULLY SUBMITTED**, this 10th day of November 2025.

                                  **VITALCORE HEALTH STRATEGIES, LLC.,
VOILA RIGGIN, SHEILA MICKLE, AND
CHARMAINE MCCLEAVE**

By:   */s/ Mary Clark Joyner*
       Mary Clark Joyner

**OF COUNSEL:**

R. Jarrad Garner (MSB #99584)
Mary Clark Joyner (MSB #105954)
ADAMS & REESE, LLP
1018 Highland Colony Parkway, Suite 800
Ridgeland, Mississippi 39157
(p) 601-353-3234
(f) 601-355-9708
jarrad.garner@arlaw.com
maryclark.joyner@arlaw.com

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have this day electronically filed the foregoing document with the Clerk of the Court using the ECF filing system and sent a copy to the *pro se* Plaintiff at:

JAMES VALANINGHAM, JR.
Inmate # 218866
South Mississippi Correctional Institute
PO BOX 1419
Leakesville, MS 39451

DATE: November 10, 2025.

>                                    */s/ Mary Clark Joyner*
>                                    Mary Clark Joyner