## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**JAMES R. VANLANINGHAM, JR.**                                      **PLAINTIFF**

**VERSUS**                              **CIVIL ACTION NO. 1:25-cv-00008-BWR**

**BURL CAIN, et al.**                                              **DEFENDANTS**

### ORDER RESOLVING OUTSTANDING
### MOTIONS AND DISMISSING CASE

*Pro se* Plaintiff James R. Vanlaningham, Jr., is an inmate housed in the custody of the Mississippi Department of Corrections ("MDOC") at the South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi. Compl. [1] at 2. Plaintiff's claims arise under 42 U.S.C. § 1983, and he names seven Defendants: (1) Burl Cain, (2) Nurse Practitioner Sheila Mickle, (3) Vital Core Health Strategies, (4) CEO Viola Riggins, (5) Charmaine McCleave, (6) Dr. Timothy Donovan, and (7) Superintendent Brand Huffman. Plaintiff is proceeding *in forma pauperis*, Order [9], and his allegations were clarified at an Omnibus Hearing on December 1, 2025.[1]

At the outset of this litigation, Plaintiff filed a Motion [50] for Extension of Time to File 1983 Civil Complaint. Also pending are two Motions [45] [60] for Summary Judgment filed by Defendants Mickle, McCleave, Riggins, and Vital Core ("the Medical Defendants") and a Motion [64] for Summary Judgment filed by Cain, Donovan, and Huffman ("the MDOC Defendants"). Plaintiff has filed no summary-

---

[1] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a more definite statement), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989).

judgment response. For the following reasons, the Court finds that all pending Motions [45] [60] [64] for Summary Judgment should be granted and that Plaintiff's claims against all Defendants should be dismissed with prejudice. Plaintiff's Motion [50] for Extension of Time to File 1983 Civil Complaint will be denied as moot, and this case will be closed.

## I.    BACKGROUND

### A. Relevant Procedural History

Plaintiff initiated this litigation on January 2, 2025, by filing his Motion [50] for Extension of Time to File 1983 Civil Complaint. The Clerk of Court construed that Motion [50] an original Complaint and opened Civil Action No. 1:25-cv-00001-BWR accordingly. Through that Motion, Plaintiff claims that he exhausted his administrative remedies on December 5, 2024. Mot. [50] at 2. Believing that gave him until January 5, 2025, to file a civil complaint in this Court, Plaintiff requested the Court extend the period of time for filing this lawsuit by another thirty days. *Id.*

Plaintiff filed the operative Complaint [1] in this case on January 8, 2025. That Complaint was construed as initiating a new, separate lawsuit. Yet Plaintiff confirmed at the Omnibus Hearing that he did not intend to file two lawsuits, as the issues raised in both cases are the same.

The Court was sensitive to Plaintiff's sincere effort to obtain an extension of time for filing his Complaint, so his two lawsuits were consolidated into one on December 3, 2025. Order [49] at 2. The Court dismissed the first-filed lawsuit

without prejudice and filed Plaintiff's Motion [50] for Extension of Time to File 1983 Civil Complaint in this case as of the date it was originally submitted to the Court. *Id*. at 2-3. That Motion [50] awaits consideration in this case.

### B. Plaintiff's Allegations

The events giving rise to this lawsuit occurred at SMCI, Compl. [1] at 4, beginning in December 2023. Plaintiff avers that he developed an antibiotic-resistant staph infection (MRSA) in his "groin area." Compl. [1-2] at 1.

Plaintiff testified that he woke up one morning with his scrotum swollen "bigger than a grapefruit." Mickle had dismissed his complaint the previous day, but Plaintiff was ultimately housed in the infirmary for three days and medicated with ibuprofen and steroids. Plaintiff testified that he was transported to the hospital on the fourth day and received emergency surgery within one hour of his arrival. The hospital physician informed Plaintiff that he would not have needed surgery had he arrived 48 hours earlier; his condition could have been treated "with medication." Had he arrived 24 hours later, Plaintiff was informed that he likely would have died.

Plaintiff testified that he remained in the hospital for eighteen days and endured two more surgeries—so the hospital surgeon could be sure he "got all of the infection." Plaintiff was cleared of the MRSA infection before he left the hospital. Back at SMCI, Plaintiff endured "very painful wound care associated with skin grafts to his scrotum" for the next twenty-nine days. Compl. [1-2] at 1. Plaintiff's left testicle shrank "to the size of a pencil eraser," and he "believes it no longer functions

3

due to the damage." *Id.* Plaintiff testified that his doctors do not expect his left testicle to recover its original size.

Plaintiff's condition has caused chronic pain, which requires regular injections. Compl. [1-2] at 1. He also "suffers from significant anxiety worrying about the possibility of impotence" and "the continued shrinking of his left testicle." *Id.* Plaintiff testified that the only treatment he presently receives is Tylenol and that his request to see an endocrinologist was denied. He also testified that his MRSA infection might have caused ocular issues, though his physicians have not affirmatively connected the two.

Plaintiff seeks $3 million in compensatory damages, $3 million in punitive damages, and another $3 million in "special damages for a myriad of traumas suffered by him." Compl. [1-3] at 1. He also seeks a declaration "that an infection such as he had constitutes an emergency," plus an injunction requiring Defendants to provide specialized medical care. *Id.*

### C. Defendants' Summary-Judgment Evidence

On April 10, 2024, Plaintiff submitted an administrative grievance to MDOC's Administrative Remedies Program ("ARP") detailing the allegations outlined above. Mot. [45-1] at 3-7. He requested various forms of relief, including monetary damages, termination of Mickle's employment, and specialized medical care. *Id.* at 6-7. This grievance was numbered SMCI-24-0675, and it was rejected on April 11, 2024, because the relief he requested was "beyond the power of the Mississippi Department

4

of Corrections to grant." *Id.* at 1.  Plaintiff was advised that "[t]he ARP cannot award monetary damages." *Id.* (emphasis omitted).  Plaintiff received notice of that rejection on April 28, 2024.  *Id.* at 8.

On May 15, 2024, Plaintiff resubmitted the exact same grievance with the request for monetary damages stricken.  Mot. [45-2] at 3-7.  This grievance was numbered SMCI-24-0881, and it was accepted into the ARP on May 16, 2024.  *Id.* at 1.  McCleave issued the first-step response on June 6, 2024, and Plaintiff received that response on July 19, 2024.  *Id.* at 9-10.  That same day, Plaintiff indicated that he wished to proceed to step two and listed this as the reason: "I have a lawyer looking into it." *Id.* at 11.  On July 22, 2024, the ARP Director advised Plaintiff by letter that he "did not appeal anything" by his response but that he could "resubmit [a] corrected request/complaint." *Id.* at 12 (emphasis omitted).  Plaintiff filed a corrected second-step appeal on October 23, 2024, and a second-step response was issued on November 14, 2024.  *Id.* at 15-16.  Plaintiff received the second-step response on December 5, 2024.  Mot. [50] at 2.

## II.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted).  "An issue is material if

its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). "In reviewing the evidence, the court must therefore refrain from making credibility determinations or weighing the evidence." *Id.* at 397-98 (quotation omitted).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)).

## III.   DISCUSSION

Exhaustion of administrative remedies through the prison grievance system is

6

a prerequisite for lawsuits filed under § 1983. *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The Fifth Circuit takes a "strict approach" to the exhaustion requirement. *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (quotation omitted). "Exhaustion is mandatory for 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 630 (5th Cir. 2003 (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Dismissal is mandatory where an inmate has failed to properly exhaust the applicable administrative grievance procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548

U.S. at 83-84. "Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement." *Evans v. Harrison Cnty. Adult Det. Ctr.*, No. 1:18-cv-00087-RHW, 2020 WL 980149, at *1 (S.D. Miss. Feb. 28, 2020). "The grievance process must be carried through to its conclusion before suit can be filed under the Prison Litigation Reform Act," or PLRA. *Id.* A properly exhausted claim has "complete[d] the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 88. Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

MDOC's ARP requires an inmate to complete two steps before filing a lawsuit. The Fifth Circuit has summarized the procedure like this:

> An inmate must file a grievance within 30 days of the complained-of incident. . . . The grievance is reviewed by the prison's legal-claims adjudicator and, if there is an adverse response at the first step, the inmate may proceed to step two. . . . If the inmate disagrees with the step-two response, he may sue.

*Wheater v. Shaw*, 719 F. App'x 367, 369-70 (5th Cir. 2018). This procedure is also outlined in MDOC's Inmate Handbook,[2] of which the Court may take judicial notice. *Montalto v. Shaw*, No. 3:20-cv-00822-HTW-LGI, 2023 WL 2258363, at *2 n.2 (S.D. Miss. Jan. 6, 2023), *report and recommendation adopted by*, 2023 WL 2254563, at *1 (S.D. Miss. Feb. 27, 2023).

The evidence before the Court indicates that administrative remedies were

---

[2] *Available at* https://www.mdoc.ms.gov/sites/default/files/2023-02/MDOC-Inmate-Handbook%202023-08-Chapter-VIII.pdf (last accessed Mar. 12, 2026).

available to Plaintiff at SMCI at all relevant times. He does not argue otherwise, and the evidence shows that he in fact completed the ARP with respect to the allegations raised herein.

Yet the summary-judgment record shows that Plaintiff's administrative grievances were not timely filed. MDOC's ARP requires that an administrative grievance be filed "in writing within a 30-day period after an incident has occurred." *See supra* n. 2, p. 16. Plaintiff's claim arose at the latest by the end of December 2023, following multiple surgeries and an 18-day hospital stay, making any administrative grievance due around the end of January 2024. Plaintiff's first grievance about these events was not filed until April 10, 2024. Mot. [45-1] at 3-7. Thus, "Plaintiff's grievance was untimely because it was not filed within 30 days of the incident." *See Hobson v. Fisher*, No. 1:16-cv-00243-RHW, 2017 WL 1042081, *2 (S.D. Miss. Mar. 17, 2017); *see also Jordan v. Houston*, No. 1:23-cv-00190-BWR, 2025 WL 1358601, at *5 (S.D. Miss. Mar. 26, 2025).

Plaintiff does not argue that his time for filing an administrative grievance should have been equitably tolled for any length of time. Though Plaintiff endured a lengthy recovery once he returned to SMCI, "[t]here is no evidence . . . that his injuries affected his physical ability to write." *See Harris v. Walker*, No. 5:04-cv-00098-JCS, 2006 WL 2669050, at *4 (S.D. Miss. Sept. 18, 2006). Rather, the only medical evidence available in this record indicates that Plaintiff's wound was healing nicely by December 30, 2023, and it gives no indication that his ability to file an

administrative grievance would have been hindered by his medical condition at that time. Mot. [60-3] at 1 (reporting that Plaintiff "came to the infirmary . . . requesting [a] dressing change" and that his wound "appear[ed] to have good granulation" with "no odor").

Since Plaintiff did not satisfy the exhaustion requirement by timely filing his initial grievance, he has now "forfeited his opportunity to exhaust his claims." *See Bridget v. Green*, No. 5:18-cv-00006-MTP, 2019 WL 4418809, at *7 (S.D. Miss. Sept. 16, 2019). Accordingly, Plaintiff's claims "should be dismissed . . . with prejudice because [his] failure cannot be cured." *See Hobson*, 2017 WL 1042081, at *2 (citing *Johnson v. La. ex rel. La. Dep't of Pub. Safety and Corr.*, 468 F.3d 278, 280-81 (5th Cir. 2006) (affirming dismissal with prejudice of claims that were unexhausted because the grievance was not timely filed); *Trigg v. Wiginton*, No. 3:10-cv-01962-B-BN, 2014 WL 696444, at *3 (N.D. Tex. Feb. 24, 2014) (dismissing unexhausted claims with prejudice because the plaintiff's "failure cannot be cured as the time for administrative remedies has expired")).

Finally, Plaintiff's Motion [50] for Extension of Time to File 1983 Civil Complaint will be denied as moot for two reasons. First, the Court has considered Plaintiff's complaint as if there were no timing issues; this case was afforded the same consideration as any civil-rights case filed by an incarcerated person. Second, Defendants concede that the filing of a civil-rights complaint is not subject to a thirty-day deadline from the receipt of a second-step response from the ARP. Resp. [59] at

10

1; Resp. [63] at 4 ("If the Court is to find that Plaintiff [properly exhausted his administrative remedies], then it could allow Plaintiff's lawsuit to proceed despite his grievance being filed outside of the prescribed timeframe set forth by MDOC's ARP."). Thus, Defendants do not oppose Plaintiff's Motion [50] for Extension of Time to File 1983 Civil Complaint because it was an unnecessary request in the first place.

## IV.    CONCLUSION

The Court has considered and liberally construed all pleadings, testimony, and arguments presented. Any not specifically mentioned herein would not have changed the outcome.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [50] for Extension of Time to File 1983 Civil Complaint filed by Plaintiff James R. Vanlaningham, Jr., is **DENIED AS MOOT**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion [45] for Summary Judgment for Failure to Exhaust Administrative Remedies filed by the Medical Defendants is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion [60] for Summary Judgment filed by the Medical Defendants is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion [64] for Summary Judgment for Failure to Exhaust Administrative Remedies filed by the MDOC Defendants is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Plaintiff's Complaint

is **DISMISSED WITH PREJUDICE**.  A separate final judgment will be entered

under Federal Rule of Civil Procedure 58.

 **SO ORDERED AND ADJUDGED,** this 16th day of March, 2026.

 *s/ Bradley W. Rath*

 BRADLEY W. RATH
 UNITED STATES MAGISTRATE JUDGE